# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN HERNANDEZ DeLEON, | Case No. 1:22-cv-01387-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | |
| Defendant. | (Doc. 1) |

_____/

## I.   INTRODUCTION

Plaintiff Steven Hernandez DeLeon ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 1383(c). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.   BACKGROUND

Plaintiff protectively filed his SSI application on July 9, 2019, alleging disability as of April

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 11.)

28, 2019, due to learning disability, high blood pressure, asthma, chronic obstructive pulmonary disease ("COPD"), anxiety, and lung issues. (Administrative Record ("AR") 62–63, 77, 315, 319, 349, 368.) Plaintiff was born on May 5, 1967, and has a limited education. (AR 36, 52, 62, 77, 315, 320, 349, 368.)

**A.    Relevant Evidence of Record[2]**

    **1.    Medical Evidence**

In June 2019, Plaintiff was under psychiatric care for an unspecified anxiety disorder. (AR 599.) He reported taking Vistaril as needed, but requested a medication for anxiety and depression. (AR 599.) On examination, Plaintiff made fair eye contact. (AR 599.) He was cooperative, a "little odd," and polite, with fair hygiene. (AR 599.) He displayed no abnormal involuntary movements, and had clear and coherent speech. (AR 599.) Plaintiff indicated his mood was "fine," and he had full affect and linear and organized thought processes. (AR 599.) His judgment was good and his insight fair. (AR 599.) No suicidal or homicidal desire or intent was noted. (AR 599.) The provider recommended he start Prozac for anxiety and depression. (AR 599.)

Plaintiff presented to a crisis stabilization center in March 2020 seeking assistance with housing while on parole. (AR 1170–74.) He reported "hearing voices" and paranoia. (AR 1170.) His mental status examination showed good judgment, regular speech, good insight, an "okay" mood, and euthymic effect. (AR 1172.) Plaintiff denied having any auditory or visual hallucinations at the time of the examination. (AR 1172.) His thought process was normal. (AR 1172.) He was assessed with an unspecified mood disorder. (AR 1173, 1174.) Later that month, during a telehealth appointment, Plaintiff reported that his mental health had been "fine." (AR 1103.) His behavior was cooperative, and he was noted to be in an "euthymic mood," with his thoughts presented as linear and remaining on topic. (AR 1103.) Plaintiff was assessed with an adjustment disorder with anxiety. (AR 1103.)

In July 2020, during a visit to the emergency department for abdominal pain, Plaintiff was cooperative with appropriate mood and affect. (AR 894.) Plaintiff reported at a telehealth

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

appointment in September 2020 that he was "doing ok," but he complained of nightmares and "seeing things." (AR 1094.) His mental status examination was normal, with a "relaxed" mood. (AR 1094.)

In December 2020, Plaintiff established care with county behavioral health services to receive therapy. (AR 1176.) He reported receiving medication services from the parole outpatient clinic and is being treated for anxiety, depression, and paranoia. (AR 1176.) According to Plaintiff, he was placed on a 5150 psychiatric hold six months prior, and is currently experiencing auditory and visual hallucinations. (AR 1176.) He denied any suicidal or homicidal ideation. (AR 1176.)

In January 2021, Plaintiff reported at a telehealth appointment that he was "doing fine." (AR 1092.) His mental status examination was normal. (AR 1092.) During a clinic visit for low back pain in February 2021, Plaintiff's mental status examination was normal. (AR 1054, 1057.) That same month, Plaintiff presented to a counseling center for an assessment related to his complaints of depression and paranoia. (AR 1239.) The provider noted Plaintiff exhibited "restlessness," "hesitant" speech, and "poor" immediate memory. (AR 1239.)

Plaintiff presented to the emergency department in March 2021 complaining of low back pain and visual and auditory hallucinations. (AR 1073–77.) On examination, his speech was rapid, pressured, and tangential. (AR 1075.) That same month, he was assessed with recurrent major depressive disorder with psychotic features, based on his complaints of auditory and visual hallucinations. (AR 1129.) Later that month, he reported during a telehealth visit that his mental health has been "alright." (AR 1091.) His mental status examination was normal, with euthymic mood and linear, on-topic thoughts. (AR 1091.)

In May 2021, Plaintiff reported to the counseling center that he had been doing "pretty good," "getting out more," and spending time with a female companion. (AR 1243, 1244.) In July 2021, services from the counseling center were terminated after Plaintiff missed several appointment and discontinued contact with the provider. (AR 1233.)

Plaintiff reported during a telehealth visit in August 2021 that he was "doing fine," albeit getting "a little angry and mad," and was continuing his sobriety, exhibiting a cooperative and polite attitude, "good" mood, linear and organized thought processes, and fair judgment and insight.

(AR 1281–82.) The provider kept Plaintiff's Prozac regimen and switched Vistaril to Trileptal. (AR 1282.)

**2. Opinion Evidence**

In October 2019, Judy K. Martin, M.D., a State agency physician, reviewed the record and assessed Plaintiff's mental residual functional capacity (RFC).[3] (AR 72–74.) Dr. Martin opined that Plaintiff was capable of understanding and remembering simple verbal instructions; capable of carrying out simple instructions over the course of a normal workweek; capable of working in limited public contact setting; and capable of adapting to a routine setting. (AR 72–74.)

Upon reconsideration in March 2020, another State agency physician, Nicole Sampson, Ph.D., reviewed the record and largely affirmed Dr. Martin's findings, adding that Plaintiff "would work best in a well spaced environment. He can complete a normal work day and work week." (AR 89.)

**B.   Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on December 5, 2019, and again on reconsideration on April 23, 2020. (AR 24, 94–98, 100–104.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 128–54.)

On October 18, 2021, Plaintiff appeared telephonically with counsel and testified before an ALJ as to his alleged disabling conditions. (AR 51–58.)

A vocational expert ("VE") also testified at the hearing. (AR 58–54.) The ALJ asked the VE to consider a person of Plaintiff's age, education, and past work history. (AR 59.) The VE was also to assume this person could perform medium work, frequently balance, occasionally stoop, kneel, crouch, crawl, and climb; can perform simple routine tasks, and make simple work-related decisions; have frequent interaction with supervisors and coworkers and occasional interaction with

---

[3] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

the public. (AR 59.) The VE testified that such a person could perform medium jobs in the national economy, such as Linen Room Attendant, Dictionary of Operational Titles (DOT) code 222.387-030, with a specific vocational preparation (SVP)[4] of 2; Cleaner II, DOT code 919.687-014, with an SVP of 1; and Hand Packer, DOT code 920.587-018, with an SVP of 2. (AR 59–60.) The VE further testified that being off task more than 10% of the workday, missing two or more days of work per month, or missing eight days of work total throughout the year, is work preclusive. (AR 60.)

Plaintiff's attorney asked the VE to consider a person with the same limitations as in the first hypothetical, but at a light exertional level and with a maximum of standing and walking to four out of eight hours a day. (AR 60.) The VE testified that there would be no work such a person could perform. (AR 60.)

**C.     The ALJ's Decision**

In a decision dated January 20, 2022, the ALJ found that Plaintiff was not disabled. (AR 24–37.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920(a)(4). (AR 26–37.) The ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 9, 2019, the application date (step one). (AR 26.) At step two, the ALJ found Plaintiff's following combination of impairments to be severe: degenerative disc disease, obesity, major depressive disorder (MDD), and an anxiety disorder. (AR 26–28.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 28–31.)

The ALJ then assessed Plaintiff's RFC and applied the RFC assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff

---

[4] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

5

had the RFC:

> to perform medium work as defined in 20 CFR [§] 416.967(c) except he can frequently balance, and occasionally stoop, kneel, crouch, crawl, and climb.  He can perform simple, routine tasks and make simple work related decisions while having frequent interactions with supervisors and coworkers and only occasional interaction with the public.

(AR 23.)  Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ."  (AR 32.)

The ALJ determined that Plaintiff had no past relevant work (step four) but that, given his RFC, he could perform a significant number of other jobs in the local and national economies, specifically Linen Room Attendant, Cleaner II, and Hand Packer (step five).  (AR 36–37.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 1, 2022.  (AR 1–7.)  Therefore, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 416.1481.

### III.     LEGAL STANDARD

**A.   Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act."  *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920.  The Ninth Circuit has provided the following description of the sequential evaluation analysis:

6

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citing *Tackett*, 180 F.3d at 1098). "Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when

the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends first that the ALJ erred by not resolving a conflict between the VE's testimony, the DOT, and Plaintiff's RFC. (*See* Doc. 17 at 9–12.) Specifically, Plaintiff asserts that limitation to simple routine tasks in his RFC is inconsistent with the jobs the VE identified at step five that Plaintiff could perform. (*Id.*) Plaintiff further asserts that the ALJ failed to develop the record to obtain an opinion from a treating or examining source, instead erroneously relying on their lay interpretation of the subsequent medical evidence. (*See* id. at 12–14.)

The Commissioner contends the ALJ's step five finding is supported by substantial evidence, and further that no duty to develop the record arose because the ALJ considered all of the evidence in the record, including the post-reconsideration records, and interpreted them in conjunction with the non-examining consultant's opinions, on which he reasonably relied, in assessing Plaintiff's RFC. (*See* Doc. 19 at 6–16.)

8

The Court addresses the parties' contentions below, and finds that reversal is not warranted.

**A.     The ALJ's Step Five Finding is Harmless Error**

Plaintiff first challenges the ALJ's determination that, based on the limitations identified in Plaintiff' RFC, that Plaintiff was capable of performing the job of a Linen Room Attendant. (Doc. 17 at 10). Specifically, as discussed above, the ALJ found that Plaintiff was capable of performing "simple, routine tasks" and making "simple work related decisions." (AR 31.) Plaintiff argues that the ALJ's step five assessment conflicts with those findings because the Linen Room Attendant position requires Level Three reasoning.

The VE testified that an individual with the same RFC as Plaintiff could perform the job of a Linen Room Attendant, Dictionary of Operational Titles (DOT) code 222.387-030; Cleaner II, DOT code 919.687-014; and Hand Packer, DOT code 920.587-018, with an SVP of 2. (AR 59–60. *See also* AR 36–37.) The ALJ "determined that the [VE's] testimony is consistent with the information contained in the [DOT]." (AR 37.) The DOT provides that the job of a Linen Room Attendant requires Level Three reasoning, which the DOT defines as ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." 222.387-030 LINEN-ROOM ATTENDANT, DICOT 222.387-030 (1991).

The Court finds that the ALJ erred in determining that Plaintiff could perform the job of a Linen Room Attendant given his limitations in the RFC. *See Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) ("[W]e join the Tenth Circuit [in *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005)] and hold that there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning.  We find the conflict to be plain when we consider, side-by-side, the definitions of Level 2 and Level 3 Reasoning."); *see also Perez v. Berryhill*, No. 2:17-CV-01798-GJS, 2018 WL 3636883, at *3 (C.D. Cal. July 29, 2018) (finding conflict exists between Plaintiff's limitation to simple, routine and repetitive tasks and simple work-related decision and the Level Three reasoning requirement of the linen attendant position). Again, the RFC limited Plaintiff to performing "simple, routine tasks" and making "simple work related decisions" (AR 31), but the Linen Room Attendant position requires Level 3

9

reasoning, *i.e.*, the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations," DOT 222.387-030.

The Acting Commissioner does not dispute this fact. Instead, they assert that the error is harmless because "the ALJ's step-five finding is still supported by the remaining representative occupations, those of [C]leaner II and [H]and [P]ackager," which require Level Two reasoning. (Doc. 19 at 7.) Plaintiff counters that even these jobs are "inconsistent with the ability to carry out 'detailed instructions,'" as required by Level Two. (Doc. 17 at 11.)

Plaintiff ignores, however, an important portion of the definition of Level Two reasoning. Level Two is defined as: the ability to "[a]pply common sense understanding to carry out ***detailed but uninvolved*** written or oral instructions" and to "[d]eal with problems involving a few concrete variables in or from standardized situations." APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702 (emphasis added). Courts, including this one, have held that the ability to perform simple, routine, and repetitive tasks is equivalent to level two reasoning. *See Trevino v. Saul*, No. 1:19-CV-00870-SKO, 2020 WL 5633037, at *15 (E.D. Cal. Sept. 21, 2020) ("A limitation to simple, routine tasks is consistent with jobs requiring a reasoning level of two.") (citations omitted); *Coleman v. Astrue*, No. CV 10-5641 JC, 2011 WL 781930, at *5 (C.D. Cal. Feb. 28, 2011) ("The Court recognizes, as defendant points out, that the weight of prevailing authority precludes a finding of any inconsistency between a reasoning level of two and a mere limitation to simple, repetitive tasks or unskilled work.") (collecting cases). *See also Abrew v. Astrue*, 303 F. App'x 567, 569 (9th Cir. 2008) (holding "there was no conflict between the ALJ's step five determination that Abrew could complete only simple tasks and the vocational expert's testimony that Abrew could do jobs that the U.S. Department of Labor categorizes at "Reasoning Level 2").

Finally, Plaintiff asserts that because he is "illiterate," he cannot perform the Level Two positions of Cleaner and Hand Packer. (Doc. 17 at 11.) Other than citing the DOT Level Two description, Plaintiff cites no legal authority for this argument.

While Plaintiff contends that his illiteracy is "well established in the instant matter," the

ALJ did not find that Plaintiff was illiterate.  To the contrary, the ALJ concluded that Plaintiff had a "limited education," citing 20 C.F.R. § 416.964  (AR 36.)  That regulation defines "illiteracy" as "the inability to read or write" and states that "[g]enerally, an illiterate person has had little or no formal schooling." § 416.964(b)(1).  It defines "limited education" as "ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs," § 416.964(b)(3).  The ALJ's explicit finding that Plaintiff had a "limited education" shows that the ALJ did not believe him to be illiterate (AR 36).  *See, e.g., Ogannesyan v. Colvin*, No. CV 15-0220-JPR, 2016 WL 2982182, at *17 (C.D. Cal. May 23, 2016).

But even if the ALJ had made an affirmative finding that Plaintiff was illiterate, Plaintiff is incorrect in asserting that illiteracy renders him unable to work in jobs requiring Level Two reasoning.  Illiteracy is addressed under language, not reasoning, level.[5]  In *Meza v. Astrue*, the court, following *Lawson v. Apfel*, 46 F.Supp.2d 941, 945, 947 (W.D. Mo. 1998), the court upheld the ALJ's decision that a functionally illiterate plaintiff could perform "both the job of small products assembler and hand packager," which have a Level One—the lowest—language level. No. C-09-1402-EDL, 2011 WL 11499, at *21 (N.D. Cal. Jan. 4, 2011).  This Court and others have recognized that a finding that an illiterate individual is unable to do Level One language jobs would mean that illiteracy is a per se disability under the DOT, which would be illogical and conflict with the Social Security regulations.  *See Yang v. Saul*, No. 1:18-CV-00759-BAM, 2019 WL 4392417, at *7 (E.D. Cal. Sept. 13, 2019); *Guerrero v. Comm'r of Soc. Sec.*, No. 1:16-CV-00573-SAB, 2017 WL 2189515, at *5 (E.D. Cal. May 18, 2017) (collecting cases).

Here, both the Cleaner II and Hand Packer jobs require Level One language.  *See* 919.687-014 CLEANER II, DICOT 919.687-014 (1991); 920.587-018 PACKAGER, HAND, DICOT 920.587-018.  *See also Ogannesyan*, 2016 WL 2982182, at *15.  Illiteracy is therefore not inconsistent with the Level Two reasoning jobs that the VE testified that Plaintiff could perform.

In sum, the ALJ's finding at step five that Plaintiff could perform the Linen Room Attendant job with a Level Three reasoning was harmless error, in light of the other two identified

---

[5] Illiteracy is also addressed under the education factor of 20 C.F.R. § 416.964, *see supra*.

11

occupations, Cleaner II and Hand Packer, which comport with Plaintiff's abilities. *See Tommasetti*, 533 F.3d at 1038.

**B.     Plaintiff's Challenge to the Incompleteness of the Record Has Not Been Preserved**

Preliminarily, as a rule, "when claimants are represented by counsel, they must raise all issues and evidence at their administrative hearings in order to preserve them on appeal." *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999). Here, as the Acting Commissioner points out, Plaintiff was represented by counsel at the administrative hearing and specifically stated they had no objection to the record. (AR 50 ("ALJ: Any objection to the exhibits?  ATTY: No objections.").); *see Meanel*, 172 F.3d at 1115; *Howard v. Astrue*, 330 F. App'x 128, 130 (9th Cir. 2009) (issue waived because attorney had opportunity to raise it at administrative hearing but did not do so); *Valdez v. Berryhill*, Case No. SA CV 16-0980 JCG, 2018 WL 317799, at *1 (C.D. Cal. Jan. 5, 2018) (issue not properly preserved where the plaintiff was represented by counsel at the administrative hearing and specifically stated he had "no objection" to the record when asked by the ALJ). Accordingly, the issue is not properly preserved for appeal.

**C.     Plaintiff Has Not Demonstrated That Remand is Required**

Even if the issue had not been forfeited, Plaintiff has not shown remand is warranted in this case.

"An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *See Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Plaintiff has not demonstrated that the record was ambiguous or inadequate to allow for proper evaluation. The ALJ summarized record evidence spanning 2019 through 2021 and found with the support of that record that Plaintiff had not established he was disabled. (AR 26–34.) The record contained what appears to be Plaintiff's complete mental health treatment records that supported the ALJ's findings and did not present an ambiguity or inadequacy. Notably, Plaintiff failed to submit any medical opinions from a treating or examining physician as to his ability to work or his functional limitations. Because it is Plaintiff's burden to present evidence of disability, *see Ukolov v. Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005), the mere absence of a report from a treating or examining physician does not give

rise to a duty to develop the record; instead, that duty is triggered only where there is an inadequacy or ambiguity. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Alvarez v. Astrue*, No. 1:08-cv-01205-SMS, 2009 WL 2500492, at *10 (E.D. Cal. Aug. 14, 2009) (finding absence of report from treating physician did not give rise to a duty to develop the record where record contained opinions of the State agency physicians and plaintiff's complete treatment records); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 416.920(a) ("[Y]ou have to prove to us that you are . . . disabled . . . .").

Contrary to Plaintiff's suggestion, an updated opinion is not required simply because additional medical evidence is received after the State agency physicians had already reviewed Plaintiff's records. *See de Hoog v. Comm'r of Soc. Sec.*, No. 2:13–CV–0235–KJN, 2014 WL 3687499, at *7 (E.D. Cal. July 23, 2014). Such an occurrence is quite common. *See id.* (explaining that "[i]n virtually every case further evidence is received after the [S]tate agency physicians render their assessments—sometimes additional evidence and records are even received after the ALJ hearing. For that very reason, the ALJ is tasked with considering the evidence in the record as a whole.").

Plaintiff cites *Stevenson v. Colvin,* in which a duty to develop the record arose (*see* Doc. 17 at 12), but that case is distinguishable because it involved subsequence evidence of a worsening condition. *See id.*, No. 2:15-CV-0463-CKD, 2015 WL 6502198, at *4 (E.D. Cal. Oct. 27, 2015) (holding that the ALJ erred in adopting the functionality opinion of a non-examining State agency physician, an opinion which pre-dated "plaintiff's treating records regarding the ***progression*** of his spinal impairments, which were developed after the date of Dr. Pancho's opinion.") (emphasis added). Here, none of evidence Plaintiff directs the Court to consider show a worsening of his existing conditions.[6] *See Smith v. Saul*, No. 1:19-CV-01085-SKO, 2020 WL 6305830, at *8 (E.D.

---

[6] In fact, these records appear to have been "cherry picked" to support Plaintiff's conclusion, and do not account for the record as a whole. For example, while an October 2019 case management note indicates that Plaintiff was "belligerent" and "aggressive" (AR 1112), a progress note from the following month shows Plaintiff was cooperative with a euthymic mood and congruent affect (AR 1112.) Plaintiff reported anxiety and hallucinations in February and March 2020, respectively (AR 1105, 1170), and thereafter presented with normal mental status examination results in

Cal. Oct. 28, 2020) (finding ALJ had no duty to develop record because "[n]one of these [additional] records establish the existence of any new condition not assessed by the ALJ, or show a worsening of Plaintiff's existing conditions."); *Hernandez v. Saul*, No. 1:19-CV-01298-GSA, 2020 WL 6700224, at *8 (E.D. Cal. Nov. 13, 2020) (same, distinguishing *Stevenson*). The Court therefore finds that the ALJ was not obligated to further develop the record.

Plaintiff also contends that because the State agency physicians on whose opinions the ALJ relied did not consider subsequent records, the RFC was the result of the ALJ improperly imposing their own lay interpretation of the medical evidence. (*See* Doc. 17 at 13–14.) This argument is also unavailing. The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Such a responsibility does not result in the ALJ committing legal error when he assesses an RFC that is consistent with the record. *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

Here, the ALJ considered not only the opinions of the State agency physicians, but also evaluated the objective medical evidence post-dating their opinions, including that which Plaintiff cites in his briefing. (*See* AR 33–34 (discussing records showing Plaintiff's treatment for anxiety and hallucinations.) The ALJ then interpreted that evidence, as they are charged to do, and formulated Plaintiff's RFC.[7]  *See, e.g., Ann M. v. Berryhill*, No. 5:18-CV-01080-KES, 2019 WL 1171160, at *6 (C.D. Cal. Mar. 12, 2019) ("Contrary to the cases cited by Plaintiff, the records in this case provided the ALJ with ample support for his RFC, which was based not on raw data but

---

July and September 2020, and in January, February, March, and August 2021, regularly accompanied by reports that he was "doing fine," "doing okay," "alright," and "pretty good." (AR 894, 1054, 1057, 1091, 1092, 1094, 1103, 1243, 1244, 1281, 1282.)

[7] The ALJ's RFC assessment is also based on consideration of Plaintiff's subjective complaints. (*See* AR 31.) Plaintiff does not challenge the sufficiency of the evidence supporting the ALJ's adverse credibility finding or the adequacy of the ALJ's reasons given to explain this finding. The Court therefore considers the ALJ's unchallenged credibility finding to be binding. *See, e.g., Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010).

14

on treatment notes, which included Plaintiff's subjective complaints, observations by physicians, and the treatment plans.") (internal quotation marks omitted)); *Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC."). *See also* 20 C.F.R. § 414.927(d)(2) ("the final responsibility for deciding [RFC] is reserved to the Commissioner), § 414.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record."). For example, although the ALJ found persuasive the limitation to simple tasks opined by Drs. Martin and Sampson (*see* AR 72–74, 89), those opinions were not dispositive and the ALJ ultimately formulated an RFC that included additional social limitations.[8] These additional restrictions further accounted for Plaintiff's mental impairments by limiting him to frequent interactions with supervisors and coworkers and occasional interaction with the general public. (*See* AR 31.)

Plaintiff does not specify what additional functional limitations in the selective records that he directs the Court to review establish that were not accounted for in the ALJ's RFC assessment. Nor does he otherwise show any inconsistency between this evidence and his RFC. It appears that Plaintiff is advocating for an alternative interpretation of the evidence he cites in his briefing. The Court, however, will not second guess the ALJ's reasonable interpretation, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Molina*, 674 F.3d at 1110.

In sum, the Court does not find error in a failure to develop the record or the ALJ's reliance on the opinions of the State agency physicians and further finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's impairments on the RFC. Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

---

[8] On January 18, 2017, the Social Security Administration published revisions to its regulations regarding the evaluation of medical evidence. See REVISIONS TO RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844-01, 2017 WL 168819 (January 18, 2017). For applications, like Plaintiff's, filed on or after March 27, 2017, the new regulations state an ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ is to evaluate opinions by considering their "persuasiveness." *Id*.

## V.     CONCLUSION AND ORDER

After consideration of Plaintiff's and the Commissioner's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **November 27, 2023**                       /s/ *Sheila K. Oberto*
                                                           UNITED STATES MAGISTRATE JUDGE